Shirley May RIGDON, formerly Shirley
May Kirschenmann, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 2140-ND.

United States District Court
S. D. California, N. D.

Aug. 30, 1961.

Lloyd G. Rainey, Beverly Hills, Cal., and Deadrich & Bates, Bakersfield, Cal., by Lloyd G. Rainey, Beverly Hills, Cal., for plaintiff.

Francis C. Whelan, U. S. Atty., Robert H. Wyshak, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

CROCKER, District Judge.

The question raised by the Government's motion to dismiss is whether or not the mitigation provisions of the 1954 Internal Revenue Code apply here so that plaintiff, taxpayer, is not barred by the three-year statute of limitations from recovering alleged overpayments. I hold for the taxpayer. The motion to dismiss is denied.

Stated in the light most favorable to the plaintiff, and with all favorable inferences drawn, the facts are as follows:[1]

350 U.S. 834, 76 S.Ct. 70, 100 L.Ed. 744.

Henry Kirschenmann and his wife, parents of plaintiff (Shirley May [Rigdon]), purchased a quarter section of farm land which they had previously leased. They paid one-third of the purchase price down and agreed to make equal payments in the two succeeding years. On January 9, 1944, a year after the purchase, the parents transferred their interest in the land to their then minor daughter, plaintiff herein, without consideration.

On February 7, 1944 (one month after the transfer), a brother of Henry Kirschenmann was appointed legal guardian. Two weeks later the guardian leased the land back to the parents for five years at an annual rental of almost twenty times their original yearly payments. The "annual rental" was over two-thirds of the purchase price.

Henry and his wife deducted the amounts paid as "rental" for the use of this land from their 1944 gross income. Conversely, plaintiff's guradian reported the amounts received as "rental" income for that year.

The Commissioner disallowed these rental payments in making a redetermination of the tax return of Henry and his wife for the taxable year ending December 31, 1944. Through appropriate procedures this disallowance of deduction was affirmed by the district court and by this circuit on the grounds that "Tax consequences are determined not from the formal aspect of a transaction, but from the actual substance of a piece of business." Kirschenmann v. Westover, 9 Cir., 225 F.2d 69, 71.

Plaintiff contends that similar disallowances were made in 1945, 1946, 1947 and 1948. The circuit court opinion makes no mention of these later years.

In the present action, plaintiff seeks to recover the amount of taxes paid from her estate for the years 1944 through 1948 on receipts from her parents which were then considered as "rental payments." The sum of the Government's contentions here is that the three-year statute of limitations has run, and plaintiff is not entitled to the relief provisions of § 3801 of the 1939 Code, 26 U.S.C.A. § 3801 or of §§ 1311–1315 of the 1954 Code, 26 U.S.C.A. §§ 1311–1315.

In an excellent article written shortly after enactment of the mitigation provisions, the purpose of the statute of limitations is noted in the following language:

"* * * Stale claims are bad because the passage of time obscures the facts about them. * * * They are bad because they force men who would defend against them to delve in the past and thus fall behind in a progressing world. * * * But as to categories of old claims *not subject to these condemnations,* the legislature may wisely make exceptions to the rules of limitations." [Emphasis added.] Maguire, Surrey and Traynor, section 820 of the Revenue Act of 1938; 48 Yale L.J. 509–532 and 719–778 at 517.

The author notes that the crux of the remedial provisions is that the party who raises the dust, and thereby gains a determination in his favor, has himself undermined the purpose of the statutory bar as to issues raised by the same transactions. "The antiquarian job * * * has already been done, the adequate evidence appraised and collected. * * * He who seeks repose should practice it by letting sleeping dogs lie." Id., at p. 518. For extensive discussion and collection of cases, see 54 A.L.R.2d 538–599.

Although there is dicta to the contrary (Sherover v. United States, D.C.S.D. N.Y.1956, 137 F.Supp. 778 (affirmed per curiam on the opinion of the district court, 2 Cir., 239 F.2d 766), the weight of authority appears to favor liberal construction of these provisions in order to effectuate the remedial purposes sought by Congress, United States v. Rosenberger, 8 Cir., 1956, 235 F.2d 69, 73; Olin Mathieson Chemical Corp. v. United States, 7 Cir., 1959, 265 F.2d 293, 297. This circuit has cited the Olin Mathieson case with approval, noting however, that it would not rewrite the statute in the

name of liberal construction, United States v. Rushlight, 9 Cir., 291 F.2d 508.

Although not necessary for the determination of this motion, since the sections applicable are not different in substance, I find that the 1954 Code sections are applicable and shall refer to them.[2]

The general rule is that an adjustment will be allowed when there is (1) a determination, (2) under certain circumstances set out in section 1312, and (3) where the Commissioner or the taxpayer has maintained an inconsistent position. See section 1311.

No extended discussion is necessary to show that the Commissioner has maintained an inconsistent position with respect to plaintiff on the one hand and her parents on the other.[3] The Government does not strenuously deny this. Nor is there any doubt but that a "determination" as defined in section 1313 was made for the year 1944.[4]

■■ However, as yet there is no showing that a "determination" was made for the years 1945 through 1948. The circuit opinion does not mention these years. Plaintiff's allegations are sufficient to indicate that the facts for the later years were similar to those upon which the circuit court made its decision. For purposes of a motion to dismiss, these allegations must be accepted as true. Hence, it is reasonably inferable that a "determination" as defined in section 1313 was made in each of the years 1945 through 1948. Plaintiff should have an opportunity to prove these by trial, Rushlight v. United States, supra, [see fifth from last paragraph in that opinion].

Furthermore, the holding in H. T. Hackney Co., Inc. v. U. S., 1948, 111 Ct. Cl. 664, 78 F.Supp. 101 [companion to Gooch, discussed infra] indicates that there need not be a determination regarding the taxable year in question, if it is clear that the facts are identical with facts about which a determination has been made in some other year. Hence, in Hackney, a determination in 1939 that a mistake had been made in Hackney's inventories was a basis for relief under the mitigation provisions for the years 1933 through 1936, although there was apparently no "determination" in the earlier years.

The Government attempts to distinguish Hackney on the ground that a finding that the opening inventory is incorrect necessarily means that the closing inventory for the prior year is incorrect, since they are one and the same figure. Hence, the Government argues that the "determination" in Hackney depended upon a link, not present in the instant case. This argument is not persuasive, however, since the link effect extends only to the year immediately preceding the year in question.

■ The most serious objection raised is that there is no "circumstance[s] of adjustment" within the meaning of section 1312. Subsection (1) provides for adjustment when "The determination requires the inclusion in gross income of an item which was erroneously included in the gross income * * * of a related taxpayer." Urging that the court adopt a strict construction of the statutory language, the Government argues (a) that taxpayer and her parents were not

2. Section 1315, Effective Date, provides, "(a) This part shall apply only to determinations (as defined in section 1313(a)) made after the 90th day after the date of enactment of this title." A "determination" is defined as " * * * a judgment, decree, or other order by any court of competent jurisdiction, which has become final." The "determination" upon which this suit is predicated became final either on October 10, 1955, when the Supreme Court denied certiorari in Kirschenmann v. Westover, supra, or "at the expiration of twenty-five days

thereafter within which a petition for rehearing might have been filed * * * " Louis Pizitz Dry Goods Company v. United States, D.C.N.D.Alabama 1960, 185 F.Supp. 186, 188. Either date is more than 90 days after August 16, 1954, the date of enactment of the applicable sections.

3. See Rushlight v. United States, supra, 9 Cir., 291 F.2d 508.

4. See the partial quotation of the definition in footnote 2 and the complete definition in § 1313(a).

"related taxpayers" and (b) that the disallowance of deduction of the payments made to plaintiff was not an "inclusion in gross income".

Section 1313(c) lists seven classifications of "related taxpayers." Among these are "(2) grantor and fiduciary" and "(3) grantor and beneficiary." The legislative history indicates that the classification of donor and donee was removed in the Conference Committee Report of the bill.[5] I can find nothing to indicate, however, that such a relationship may not be covered by another classification.

Local law has been held applicable to the definition of these classifications, Taxeraas v. United States, 8 Cir., 1959, 269 F.2d 283; Ross v. United States, D.C. Mass.1954, 122 F.Supp. 642; and the same case, 1957, D.C., 148 F.Supp. 330. California Probate Code, § 1400 declares that the relation of guardian and ward is "subject to the provisions of law relating to trusts," see also Guardianship of Reynolds, 1943, 60 Cal.App.2d 669, 141 P.2d 498. While it is true that there are clear differences in the relationship Fox v. Minor, 1867, 23 Cal. 111, 112, I think that a guardianship and a trust are fraught with the same type of intricate tax dangers as to the grantor as was contemplated by the Congress when it enacted the remedial provisions. As stated in the Maguire article, supra, at page 770, "Congress thought that the nature of these relationships was such that in most cases in which they were present it could safely be presumed that the parties would act in unison and would present a single approach to their tax problems. * * * Moreover, as these relationships give rise to difficult problems concerning the allocation of income to the proper party, especially where the relationship is further complicated by assignments between the parties, the ensuing tax litigation has frequently resulted in the inequities sought to be eliminated by section 820."

Still, the Government urges that the relationship did not exist at the time of the transfer nor even at one point in time since the appointment of the guardian did not occur until one month after the transfer of the parents' interest. However, section 1313(c) provides only that the relationship exist "in the taxable year with respect to which the erroneous inclusion * * * was made." More specifically, CFR § 1.1313(c)–1 states, "The relationship need not exist throughout the entire taxable year with respect to which the error was made, but only at some time during that taxable year * * *." An example is given of a man assigning rents to his fiancee whom he later marries within the taxable year.

Even so, the Government argues the relationship must exist, one to the other, at one instant in time during the taxable year. Apparently, the Government would hold that the grantor is a "grantor" only for the theoretical moment when title is passing. However, as to a particular transaction involving a particular piece of land between particular property, the term "grantor" continues. Nor do I find anything in the statute indicating that the relationship must exist one to the other at any one instant. Moreover, proof may show, as the allegations indicate, that the grant of land and the appointment of a guardian were both part of a single transaction.

Finally, the Government contends that the circuit "determination" that the deductions of payments made to plaintiff were not in fact rental payment is not an "inclusion in gross income" within the meaning of section 1312(1). I think that the rules announced in the leading case of Gooch Milling & Elevator Co. v. United States, 1948, 111 Ct.Cl. 576, 78 F.Supp. 94, by analogy, result in a contrary conclusion.

Gooch arose under another clause in the predecessor of section 1312(1) which allows adjustments for a taxpayer where

5. See Conference Committee Rep. No. 75th Cong. 3d Sess., pp. 58 and 59, as quoted in Mertens, Law of Federal Income Taxation, v. 2, § 14.15, footnote 4 (1961 revision).

**154**

there is a redetermination which "requires the inclusion in gross income of an item which was erroneously included in the gross income of the taxpayer. for another taxable year * * *." Gooch had erroneously overvalued its inventories in 1935, and hence, overstated its net income. The Commissioner corrected this error in the following year, thereby showing the overpayment for 1935 and making a deficiency in 1936. Gooch sued for the overpayment, relying upon the mitigation provisions of the 1939 Code in order to avoid the bar of limitations.

The Court of Claims refused to follow the Government's contention that the adjustment of inventories was not an "inclusion in gross income" and held that an item " * * * should be interpreted to include any item or amount which *affects gross income* in more than one year, * * *. While it is true that inventories are not of themselves items of income or deduction, they are *vital in the determination of gross* income, * * *" [*emphasis added*] 78 F.Supp. 94, 100. Later decisions upheld the Gooch rationale (see cases collected in Mertens, Federal Income Taxation, § 14.05, Footnote 37), and it has now been adopted by the Revenue Service, Revenue Ruling 58–327.

In the Rushlight case, the Ninth Circuit specifically refused to rule on whether or not there was a distinction between a "determination affecting basis" and a "determination of basis". [291 F.2d 515.] I find that the question of whether or not an item which "affects gross income" is indistinguishable from an "inclusion in gross income" is raised in this motion and hold that the terms are indistinguishable. Although the point is by no means certain, my decision seems consistent with the Gooch case and with the remedial purpose of the legislation.

Nevertheless, the Government cites statements in Senate Report No. 1983 of the Technical Amendments to support a contrary position, see U.S.Code Congressional and Administrative News 1958, p. 4791 at 4870. This Report gives an example of payments from a subsidiary to a parent corporation which the subsidiary claims as income deductions. After the disallowance of these deductions on the grounds that they are dividends rather than interest payments, the parent company attempts to receive an intercorporate dividend credit. The Report says,. " * * * the *Internal Revenue Service* does not regard that provision [i. e. §: 1312] as being applicable to a case such. as the example posed, which involves the treatment of a payment by one taxpayer and the treatment of its receipt by another taxpayer," (p. 4870).

Admittedly, the Senate Report and the Gooch case appear to be inconsistent.. However, the Report is, by its own terms,. merely a statement of the position which the Revenue Service has taken. Such a. position is not binding upon this court.. On the other hand, Gooch has been frequently cited by courts and has withstood thirteen years of Congressional silence including therein a complete revision of the Code and several minor revisions of the exact provisions in question.

Although not argued by the parties,. there may be some question as to which party is the "related taxpayer" within the language of section 1312(1). The somewhat ambiguous language states, "The determination requires the inclusion in gross income of an item which was erroneously included in the gross income * * * of a related taxpayer." Section 1313(c) states, " * * * the term 'related taxpayer' means a taxpayer who, with the taxpayer with respect to whom a determination is made, stood,. * * * in one of the * * * relationships:" [giving the seven classifications]. It follows that the "related taxpayer" in the instant case is the plaintiff herein and that the party about whom the determination is made is her parents. The required inclusion is the payment which. has been found nondeductible by the circuit court determination. The "erroneous inclusion" is the alleged inclusion of rental payment by plaintiff.

Two additional points should be mentioned:

Since filing of briefs and the oral argument on this motion, the Ninth Circuit.

has decided the appeal in Rushlight v. United States, supra, reversing the district court. Except as otherwise noted in this opinion, that holding has nothing to do with the facts of the instant case. There, the court interpreted the "circumstance of adjustment" pertaining to basis, found in section 3801(b) (5) of the 1939 Code and specifically refused to consider the problem from the point of view of the predecessor of section 1312(1).

■ Finally, the Government argues that the Ninth Circuit "determination" in Kirschenmann v. Westover, supra, did not decide that ipso facto there was error in plaintiff's payment of taxes. I agree. A finding that plaintiff comes within the provisions of sections 1311–1315 will not result in judgment for plaintiff, but merely allows her to proceed to the merits of her case. See Maguire, etc. article, supra, at page 572.